IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CARMEN PACHECO § | |
| § | |
| v.     § | NO.  A-07-CA-611 LY |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
          UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint (Clerk's Doc. No. 4); Plaintiff's Brief (Clerk's Doc. No. 17); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 23); and the Social Security Record filed in this case (Cited as "Tr."). Plaintiff appeals from the Administrative Law Judge's (ALJ) determination that she is not "disabled" and presents for review the following issues: (1) whether the ALJ's decision properly considered all of Plaintiff's impairments; (2) whether the ALJ's decision provided the appropriate rationale with regard to the findings of residual functional capacity in relation to the ability to maintain gainful work activity; (3) whether the ALJ's decision gave proper weight to the treating doctor's opinion; and (4) whether the ALJ improperly relied on vocational expert testimony because it was inconsistent with the *Dictionary of Occupational Titles* (DOT).

**I. GENERAL BACKGROUND**

On November 21, 2005, Plaintiff Carmen Pacheco ("Plaintiff") applied for benefits under Title XVI of the Social Security Act ("Act"), alleging disability beginning August 15, 2005 (Tr. 69) due to a variety of ailments, including heart disease, high blood pressure, low thyroid levels, and

fibromyalgia. She sought review of initial and reconsideration denials (Tr. 25, 33). Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on January 30, 2007, by video in Austin, TX (Tr. 37, 360-83). The ALJ issued an unfavorable decision dated March 20, 2007 (Tr. 13-21), finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council declined Plaintiff's Request for Review by notice on May 24, 2007 (Tr. 5), making it the Final Decision of the Commissioner. On July 18, 2007, Plaintiff brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying Plaintiff benefits under the Act.

## II.  THE HEARING BEFORE THE ALJ

On January 30, 2007, Administrative Law Judge Rita Carroll ("ALJ"), held a hearing on Plaintiff's application for benefits. Plaintiff testified at the hearing and was represented by her attorney Harold C. Phillips, though she is now represented by Mary Ellen Felps. Donna Eagar, a vocational expert, and Dr. Barbara Felkins, a medical expert, also testified at the hearing (Tr. 13).

**A.     Plaintiff's Testimony**

Plaintiff was born January 20, 1964 and was 42 years of age at the time of her hearing before the ALJ. She has limited education and is able to communicate in English. At the hearing, she testified that she is unable to work as a result of fibromyalgia, acid reflux, and thyroid disease. She stated she quit her last job as a home care attendant in 1997 or 1998 because of her fibromyalgia and the pain she felt in her arms and hips. She testified that she no longer drives, primarily because she no longer has a vehicle she can use. She stated that her 14-year-old child does the cooking; usually in the microwave. She testified that she is unable to walk more than a ½ a block and that her daughter helps her get into the shower. She asserted that she experiences 6 bad days a week and that

2

she stopped attending church in October 2006. She also stated that, although she has been instructed to exercise, she does not because it is too hard. When the ALJ asked her how much she can lift, Plaintiff raised her cane. Plaintiff stated that she naps all day and that her 23-year-old son comes over several times a day to help with the 4-year-old child who is otherwise in her care all day.

**B.     Medical Expert's Testimony**

The medical expert, Dr. Barbara Felkins, testified that the evidence shows the claimant had experienced a recent hysterectomy, mild left lower extremity edema, and that she received temporary treatment for a heart-related ailment, but that it was not severe. She testified that the record shows the claimant has been treated off and on for depression and that she often goes off of her medications. The medical expert, who is a psychiatrist, opined that the longitudinal treatment records did not reflect a severe mental impairment. She also stated the claimant has a hypothyroid condition that also is not severe. The medical expert noted that the evidence documented the claimant requested to be treated for and diagnosed with fibromyaligia. She also noted that the claimant's treating physician stated in his notes that the claimant helped him to complete his report. Dr. Felkins concluded that the combination of the claimant's impairments may result in a residual functional capacity to perform light work.

The medical expert further testified that the claimant has no impairment that is individually severe, although she should wear support hose. In the expert's opinion, the record does not document the basis for a diagnosis of thoracic outlet syndrome, and mild venous reflux of the lower extremity would not require more elevation than could adequately be obtained after work hours.

### C.     Vocational Expert's Testimony

The vocational expert was asked whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all these factors the individual would be able to perform the requirements of representative occupations such as an assembler, an electrical equipment inspector, and a hand packager. The vocational expert testified that these jobs are classified within the DOT as light, unskilled work. She further testified that there exists 25,000 jobs as an assembler within the Texas economy and 300,000 in the national economy; 6,000 jobs as an electrical equipment inspector in the Texas economy and 70,000 in the national economy; and 12,000 jobs as a hand packager in the Texas economy and 150,000 in the national economy.

The vocational expert further testified that the claimant's past work as a home care attendant is classified within the DOT as medium, semi-skilled work. With a residual functional capacity to perform no greater than light work, the vocational expert stated that the claimant is unable to perform her past relevant work.

### III.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act. Based on medical records and testimony, the ALJ found that the claimant had the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8 hour work day, sit 6 hours in an 8 hour work day, and push and/or pull limited to the weights given above. The ALJ also found the claimant able to perform simple, unskilled work.

The ALJ's opinion found that the claimant had the following severe combination of impairments: obesity, mild venous reflux of the legs, and depression. She also found that the

claimant does not have an impairment or combination of impairments that meets the requisite level of impairments as prescribed in the Social Security regulations (Tr. 15). She noted that while the claimant had medically determinable impairments that could reasonably be expected to produce the alleged symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.

The ALJ considered the opinion of the treating physician, Dr. Santos, but found that "[b]ecause of some of the inherent contradictions included therein and because of the lack of objective clinical findings or laboratory data to support certain parts of his conclusions, [she was] unable to find it consistent with the record as a whole." (Tr. 19) In particular, she found that Dr. Santos contradicted the accuracy of his residual functional capacity evaluation with his concurrent notations regarding the claimant's efforts to seek disability on any possible diagnosis she can think of and her unwillingness to work, indicating he is deferring to her lack of motivation to work over his medical opinion that she is physically capable of working. The ALJ found that Dr. Santos' treatment records are consistent with his opinion that the claimant is physically capable of sustaining full-time work, notwithstanding her lack of motivation. The ALJ also found that the testimony of the medical expert was consistent with the evidence as a whole, so she gave her testimony great weight (Tr. 19).

## IV.  ISSUES BEFORE THE COURT

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Specifically, Plaintiff argues that (1) the ALJ's decision failed to properly consider all of Plaintiff's impairments; (2) the ALJ's decision did not provide the appropriate rationale with regard to the findings of residual functional capacity in relation to the

ability to maintain gainful work activity; (3) the ALJ's decision failed to give proper weight to the treating doctor's opinion; and (4) the ALJ improperly relied on vocational expert testimony which she alleges is inconsistent with the *Dictionary of Occupational Titles* (DOT).

## V.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court, as dictated by 42 U.S.C. § 405(g), is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *James v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

## VI.  ANALYSIS

The Court will analyze each of Plaintiff's issues in turn.  For the reasons that follow, the Court will RECOMMEND that the Commissioner's decision be AFFIRMED.

**A.    Did the ALJ's decision properly consider all of Plaintiff's impairments?**

Plaintiff argues that the treating physician, Dr. Santos, diagnosed several impairments that the ALJ failed to consider, including metabolic syndrome, left ventricular hypertrophy, clinical hypothyroidism, thoracic outlet syndrome, venus reflux in the 'lower extremities' and dysmetabolic syndrome X.  However, a review of the record shows that her claims regarding these alleged conditions are not supported by objective evidence of limitation.  Often times, many of these alleged conditions are included in the past medical history section of the encounter reports, which is not a diagnosis of the condition as Plaintiff argues.  The ALJ's decision properly considered all of Plaintiff's impairments that are supported by objective evidence of limitation.

Reviewing the record, the Court finds the Plaintiff's arguments with respect to thyroid impairment, metabolic syndrome, left venticular hypertrophy, thoracic outlet syndrome, fibromyalgia, and dysmetabolic syndrome X are without merit.  Dr. Felkins, the medical expert who testified at the hearing, testified that "metabolic syndrome" was essentially a reference to Plaintiff's obesity (Tr. 376), and the ALJ found the claimant suffered from obesity. Plaintiff's allegations of significant cardiovascular disease are unsupported by the evidence, and the findings do not suggest even minimal limitations on her capacity to work.   On September 21, 2005, Dr. Santos reported Plaintiff's heart rhythm was regular without murmurs, and she had no clubbing, cyanosis, or edema in the lower extremities (Tr. 148).  Doctors performed an angiogram on October 26, 2005, which

revealed left ventricular systolic functions at the lower level of normal. Testing revealed normal coronary anatomy and no evidence of obstructive disease (Tr. 185).

On November 30, 2005, an echocardiogram revealed normal left ventricular size, with "very mild" left ventricular hypertrophy, normal systolic and diastolic left ventricular function ejection fraction at 60 percent (Tr. 155). The test revealed normal right ventricular cavity, normal left atrial cavity, normal right atrial cavity, normal valve structure and function, normal aortic valve structure and function, only trace tricuspid regurgitation, normal right heart systolic pressure and no pericardial effusion (Tr. 155).

With respect to the alleged thyroid impairment, thyroid testing revealed Plaintiff's Thyroxine Free (FT4) was within the normal range, as was the measurement of thyroid stimulating hormone (Tr. 180). To the extent that Plaintiff experiences thyroid symptoms, the evidence in the record also shows that Plaintiff has a consistent and well documented pattern of non-compliance in taking her thyroid medications (Tr. 146, 148, 149, 224, 230).

As for Plaintiff's alleged fibromyalgia, Dr. Adriana Cheever indicated in March of 2006 that Plaintiff had alleged numbness and tingling of her left arm around the elbow and a left sided headache, both occurring and ending the day before. Dr. Cheever's report is one of the few to include Plaintiff complaining of symptoms consistent with fibromyalgia, though fibromyalgia is included in the past medical history on several medical reports. Plaintiff exhibited multiple tender points around the scapula and left shoulder and tenderness at the lateral epicondyle of her left elbow (Tr. 230). Although Plaintiff contends that Dr. Santos diagnosed fibromyalgia back in 2005, a review of the record shows that fibromyalgia was actually included in the PFSH (Past, Family, Social History) section of the 2005 encounter report (Tr. 143). Fibromyalgia was also included on several

subsequent encounter reports as a past medical condition (Tr. 144–150).  Despite Plaintiff's contentions to the contrary, this is not a diagnosis of fibromyalgia, but rather a listing of past conditions that the patient may have suffered from.  This does not indicate that Dr. Santos was diagnosing fibromyalgia, and the fact that he later included a question mark after fibromyagia in the "past medical history" section during the April 3, 2006 visit indicates that he was not sure the claimant even had a past history of fibromyalgia, much less a current case of the condition (Tr. 232).  Dr. Santos candidly revealed the following in his encounter report: "Doubt she is as bad-off as she claims to be.  I strongly suspect if she were motivated she could work.  But since she lacks motivation she would not do well in any work environment.  With the patient's help we filled out the information her attorney asked for me to fill out." (Tr. 232).  Dr. Santos also reported that "[s]he WANTS disability.  She thinks she might have M.S. or fibromyalgia and wonders if we should test for it." (Tr. 232)  This statement certainly does not indicate that Dr. Santos was diagnosing fibromyalgia during that encounter, and even if he had previously diagnosed the patient with fibromyalgia in 2005 (which it does not appear he did), it is clear that by the time of the 2006 report Dr. Santos no longer believed she suffered from the condition.

Finally, Plaintiff's high cholesterol apparently is the only objective medical finding that is consistent with the alleged condition referred to as dysmetabolic syndrome X.  This condition was included in the April 3, 2006 report, which the ALJ properly discounted, as will be discussed below.  Substantial evidence supports the conclusion that the ALJ properly considered all of the claimant's conditions for which there was objective medical evidence to support.

**B.     Did the ALJ's decision provide the appropriate rationale with regard to the findings of residual functional capacity in relation to the ability to maintain gainful work activity?**

Plaintiff also argues that the ALJ's decision did not provide the appropriate rationale with regard to the findings of residual functional capacity in relation to the ability to maintain gainful work activity. This argument is waived due to Plaintiff's failure to conform to this Court's order directing her to brief each issue in a separate numbered paragraph and warning her that failure to do so could result in the Court not considering that argument. (*See* Clerk's Docket No. 13).[1]

**C.     Did the ALJ's decision gave proper weight to the treating doctor's opinion?**

The Fifth Circuit has required that the treating doctor's opinion be given "great weight." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ cannot reject a medical opinion without an explanation for doing so. *Loza v. Apfel*, 129 F.3d 378, 395 (5th Cir. 2000). However, a treating physician's opinions are far from conclusive and may be assigned little or no weight when good cause is shown. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2000). The opinion of a treating source will not be given controlling weight if it is inconsistent with the other substantial evidence of record. *Spellman v. Shalala*, 1 F.3d 357, 364–65 (5th Cir. 1993).

Plaintiff argues that the ALJ failed to consider the limitations that would arise from the conditions that the treating doctor, Dr. Santos, diagnosed, and the ALJ failed to accept the limitations that Dr. Santos reported in his physical assessment. Dr. Santos completed a physical assessment of the ability to do work related activities on a day-to-day basis based on the diagnoses of venous

---

[1] *See also* Order containing warning dated March 28, 2008 in *Fielder v. Astrue*, No. A-07-CA-767 SS (directed to same counsel representing Plaintiff here).

reflux to legs, thoracic outlet syndrome, chronic gastritis, hypothyroidism, and metabolic syndrome. Dr. Santos limited the Plaintiff to lifting 10 pounds occasionally and less than 10 pounds frequently, to standing and walking for less than 2 hours in an 8 hour day, to sitting for 2 hours or less in an 8 hour day, with a need to shift at will from sitting or standing/walking with the legs elevated when sitting for prolonged periods above the heart for 50-75% of the workday. He also stated that Plaintiff should not stoop, bend, crouch, squat, or climb stairs or reach overhead, and that she should avoid extremes of temperature and fumes, odors, dusts, gases and poor ventilation, as well as hazards (TR 219). Finally, he stated that she would have absences from work more than 3 times a month due to her impairments (TR 220).

The ALJ found Plaintiff's limitations were not as severe as Dr. Santos reported on this form, and she explained that she rejected the physical capacity form of Dr. Santos because he contradicted himself with his concurrent notations. The ALJ understood and appreciated the fact that Dr. Santos' real opinion was that Plaintiff was capable of full-time work:

> Although the claimant's treating physician provided his opinion that the claimant was disabled, his accompanying note of April 3, 2006 indicated that he believes that she is physically capable of working, but doesn't want to. . . . Dr. Santos himself contradict[ed] the accuracy of his disabling residual capacity evaluation with his concurrent notations regarding the claimant's efforts to seek disability on any possible diagnosis she can think of and her unwillingness to work, indicating he is deferring to her lack of motivation to work over his medical opinion that she is physically capable of working."

Tr. 18–19. Therefore, it is inaccurate to say that the ALJ failed to consider Dr. Santos' opinion, making the residual functional capacity conclusion improper. Rather, the ALJ fully considered his opinion, and found that the residual functional capacity stated in Part III above "was consistent with the record and fully considers the subjective allegations of the claimant, as well as the medical opinions and other evidence." Substantial evidence supports the conclusion that "the claimant at

11

most has mild limitations in her ability to carry out activities of daily living, mild limitations in her ability to maintain social functioning, and mild limitations in her ability to maintain concentration, persistence, or pace, with no episodes of decompensation of extended duration."

Plaintiff also argues that the reasons the ALJ gave for rejecting Santos' physical assessment and diagnosis are an insufficient basis for rejecting the opinion of treating and examining doctors. The Court disagrees. First, the ALJ actually accepted what she believed was Dr. Santos' true opinion – that the Plaintiff was capable of working. Second, to the extent that the ALJ did reject Dr. Santos' opinion, good cause for rejecting a treating physician's opinion may exist when – as here – the treating source's opinion is unsupported by his own clinic notes. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Not only are many of these alleged conditions part of the Plaintiff's claimed past medical history, rather than a current diagnosis, Dr. Santos' own clinic notes showed, and the ALJ accepted, that Dr. Santos believed Plaintiff was capable of working. Moreover, Dr. Santos' opinion (if it really was as Plaintiff claims) was conclusory in that he did not provide objective medical evidence to support his findings. *See Leggett*, 67 F.3d at 566 ("Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'"). Since there is no supporting clinical data of the conditions the claimant believes were improperly discounted, and Dr. Santos' notations give good cause to discount these conditions if they were in fact diagnosed (which is not so clear), substantial evidence supports the ALJ's evaluation of Dr. Santos' opinion.

**D.     Did the ALJ improperly rely on vocational expert testimony because it was inconsistent with the *Dictionary of Occupational Titles* (DOT)?**

Plaintiff next argues that the ALJ's decision improperly relied on vocational testimony because it was inconsistent with the DOT. The Vocational Expert (VE) testified that considering her abilities and limitations, Plaintiff could perform the jobs of assembler, electrical equipment inspector, and hand packager. Plaintiff argues that these jobs are inconsistent with Plaintiff's abilities and with the definitions in the Dictionary of Occupational Titles in that they require frequent bending or twisting of the body, which is not consistent with the limitations given by the ALJ.

Plaintiff's allegation of error on this issue is also without merit. Plaintiff errs in her claim that any of these jobs identified by the VE require frequent bending or twisting of the body. The job of production assembler specifically states that assembler jobs require only occasional stooping and crouching and no balancing, climbing, or kneeling. *See DOT* 706.687-010. The occupation of hand packager is described as requiring only occasional balancing with no climbing, stooping, kneeling, crouching, or crawling. *See DOT* 920.587-018. Finally, the occupation of final inspector, electrical, specifically provides that there is no requirement to stoop, kneel, balance, climb, crouch or crawl. *See DOT* 727.687-054.

## VII. RECOMMENDATION

Given the foregoing, the Magistrate Court **RECOMMENDS** that the District Court **AFFIRM** the decision of the Commissioner and **ENTER JUDGMENT** in favor of the Defendant.

## VIII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 27th day of June, 2008.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE